1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RON KICZENSKI,

11          Plaintiff,                    CIV S-03-2305 MCE GGH PS

12      vs.

13   JOHN ASHCROFT, et al.,               ORDER AND FINDINGS AND

14          Defendants.                   RECOMMENDATIONS

15   _____/

16          Plaintiff is proceeding pro se and in forma pauperis in this action, referred to the

17   undersigned pursuant to E.D. Cal. L.R. 72-302(c)(21).  Hearing on defendants' motion for

18   summary judgment pursuant to Fed. R. Civ. P. 56, filed June 29, 2005, and plaintiff's motion for

19   summary judgment,[1] filed July 5, 2005, was held on July 28, 2005.  John Gisla appeared for

20   defendants.  Plaintiff appeared in pro se.  In preparing this decision, the court reviewed Hemp

21   Industries v. Drug Enforcement Admin., 357 F.3d 1012 (9th Cir. 2004), which had not been

22   raised by the parties.  Further briefing was ordered on this basis and the parties have now

23   complied with that directive.

24   \\\\\

25   _____

26          [1]  Because plaintiff's opposition contains no substantive argument, the court will construe
     his motion for summary judgment as an opposition to defendants' motion.

1

BACKGROUND

This action is proceeding on the complaint filed November 4, 2003.  Plaintiff alleges that federal government officials have thwarted his attempts to possess, plant, cultivate and use hemp for various reasons, including food, cloth, paper, building materials, and above all for use in his pain management.  Although plaintiff filed an application with the Drug Enforcement Agency ("DEA") to grow and use hemp, he claims his application was returned without being processed as incomplete and lacking the filing fee.  Plaintiff is currently in possession of cannabis seeds and medical cannabis.  After dismissal of his claims under the Fifth, Eighth, Ninth, and Tenth amendments to the Constitution, as well as the Commerce Clause and an Executive Order, the only claim remaining is under the First Amendment and/or RFRA (Religious Freedom and Restoration Act).  Plaintiff seeks injunctive relief.

DISCUSSION

As a preliminary matter, plaintiff's post hearing filing of August 1, 2005, entitled "supplemental affidavit," is found untimely submitted.  E. D. Local Rule 78-230(c).  Furthermore, even if it were considered, it would be rejected.  Plaintiff urges the court to permit him to amend his complaint to add a claim under RLUIPA or to consider this act in deciding the motion under submission.  The Religious Land Use and Institutional Persons Act of 2000 (RLUIPA), codified at 42 U.S.C. § 2000cc, protects only institutionalized persons from a substantial burden imposed by the government on the practice of their religion.  It also prevents the government implementing a land use regulation that burdens an individual's exercise of religion.  Plaintiff is not confined to an institution.  Nor is the Controlled Substances Act which regulates the activity in which plaintiff seeks to engage a land use regulation.  Therefore, RLUIPA does not apply to this case.

I.  Summary Judgment Standards Under Rule 56

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita Elec. Indus. Co. v.

1    Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P.

2    56(e) advisory committee note to 1963 amendment).  Summary judgment is appropriate "if . . .

3    there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

4    as a matter of law." Rule 56(c).  Disputed facts must be material (affecting the outcome of the

5    suit under the governing law), and genuine (supported by evidence permitting a reasonable jury

6    to return a favorable verdict).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.

7    2505, 2510 (1986).

8              The moving party:

9              [A]lways bears the initial responsibility of informing the district
               court of the basis for its motion, and identifying those portions of
10             "the pleadings, depositions, answers to interrogatories, and
               admissions on file, together with the affidavits, if any," which it
11             believes demonstrate the absence of a genuine issue of material
               fact.

12

13   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Rule 56(c)).

14             The moving party without the burden of proof at trial may rely "solely on the

15   pleadings, depositions, answers to interrogatories, and admissions on file." Id. (citations

16   omitted.)  That party need only point to the absence of a genuine material factual issue, and is not

17   required to produce evidence negating the opponent's claim.  Id. at 323-24; Lujan v. National

18   Wildlife Fed'n, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990).

19             When the moving party meets its responsibility, the burden shifts to the opposing

20   party.  Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356.  The opposing party then must submit

21   "significant probative evidence" on each element of his claims on which he bears the burden at

22   trial.[2]  Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994).  Unverified denials in pleadings are

23   insufficient.  Neither can conclusory statements defeat a properly supported motion.  Scott v.

24   Rosenberg, 702 F.2d 1263, 1271-72 (9th Cir. 1983).  Rather, specific facts in the form of

25   _____

26             [2]  "[A] complete failure of proof concerning an essential element of the nonmoving
     party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 322.

                                                    3

1   affidavits or admissible discovery material must be submitted.  Rule 56(e); <u>Matsushita</u>, 475 U.S.

2   at 586 n.11, 106 S. Ct. at 1356 n.11.

3          The opposing party need not conclusively establish any fact.  To demonstrate a

4   genuine dispute, however, the opposing party "must do more than simply show that there is some

5   metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead

6   a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

7   <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).  In other words, the evidence

8   must demonstrate that a trial is required to resolve the parties' differing versions of the truth.

9   <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

10          The court believes the evidence of the opposing party, <u>Anderson</u>, 477 U.S. at 255,

11   106 S. Ct. at 2513, and draws all reasonable inferences in its favor, <u>Matsushita</u>, 475 U.S. at 587,

12   106 S. Ct. at1356.  Nevertheless, inferences are not drawn out of the air, and the opposing party

13   must produce a factual predicate from which to draw an inference.  <u>Richards v. Nielsen Freight</u>

14   <u>Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

15          II.  <u>Defendants' Motion for Summary Judgment</u>

16          Defendants brief the effect of the Religious Freedom Restoration Act ("RFRA").

17   Defendants indicated at hearing that they gave plaintiff's pleadings a liberal reading and

18   addressed his claims under this act out of an abundance of caution.  At hearing, plaintiff

19   indicated that he was not aware of RFRA, but after it had been explained to him, he wished to

20   proceed under both the First Amendment and RFRA.[3]  Therefore, his claim will be analyzed

21   under both standards.

22          A.  <u>Effect of Hemp Industries ("Hemp II")</u>

23          In <u>Hemp Industries v. Drug Enforcement Admin.</u>, 357 F.3d 1012 (9th Cir. 2004)

24   ("Hemp II"), the Ninth Circuit held that because the Drug Enforcement Administration ("DEA")

25   _____

26          [3]  At hearing, plaintiff, ever wary, at first believed that the government's invocation of
RFRA was some sort of "trick."

4

did not follow the correct procedures for scheduling a substance, it had no authority to regulate

drugs which were not scheduled.  Id. at 1018.  Specifically, the court found that the Final Rules

banning non-psychoactive hemp products which are not within the Controlled Substances Act's

("CSA") definition of marijuana or which do not contain synthetic THC, could not be enforced.

Id.  In other words, the DEA only has authority to enforce rules and regulations banning

marijuana or synthetic THC.

At first glance, Hemp II appeared to be on point with the position taken by

plaintiff in his complaint: "[t]he hemp plant is a different strain of cannabis with a different

chemical-based makeup, and contains no viable amounts of the chemical THC that exists in

some of the other strains of cannabis, and is of no end use value in the illegal (drug) trade."

Compl. at 16:22-24.  In his opposition to defendants' August, 2004 motion, plaintiff also raised

the issue of the CSA's authority to regulate his activities because they "do not fall within the

definition of this legitimate category of legislative authority."  Oppo., filed September 10, 2004,

at 2:17-21.  Throughout this opposition, plaintiff emphasized that growing hemp for utilitarian

purposes was not intended to be outlawed by the government's ban on drugs.

Briefing submitted by the parties after hearing now clarifies that plaintiff's

proposed activity is properly regulated by the DEA and the plants he seeks to grow are defined as

marijuana.  Although Hemp II, struck down the regulation, the statute remains and defines

marijuana as:

> (16) The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802.

1    As the government correctly points out, <u>Hemp II</u> is distinguishable because the

2    plaintiffs were manufacturers, distributors and sellers of products containing parts of the cannabis

3    plant which were expressly excluded from the definition of marijuana.[4]  In this case, plaintiff

4    attempts to grow the entire plant, much of which is expressly prohibited under the definition.  In

5    fact, as the government notes, in <u>Hemp Industries v. Drug Enforcement Admin.</u>, 333 F.3d 1082

6    (9th Cir. 2003) ("Hemp I"), the court stated that "the industrial hemp plant itself, which falls

7    under the definition of marijuana, may not be grown in the United States. Therefore, the seeds

8    and oil must be imported."  <u>Id.</u> at 1085, n. 2.

9    Although plaintiff attempts to distinguish an "industrial" or "feral" plant from the

10   plant defined in 21 U.S.C. § 802(16) as marijuana, he finally concedes that he has run out of time

11   and money to make the alleged distinction.  He has submitted a declaration by Christopher

12   Conrad who claims to be an expert on the subject, but the declaration does not support plaintiff's

13   assertion that there are two types of plants and the one he seeks to grow is not defined as

14   marijuana.  Rather, Conrad impliedly undercuts plaintiff's assertion by stating that "marihuana

15   'is derived from the flowering tops of the female plant of hemp grown in semi-tropical and

16   temperate countries.'  Hence, if hemp is harvested before such flowers develop to a usable

17   extent, there is no marihuana, which is consistent with the illicit trade in marijuana today; it is

18   concerned with the mature female flowering tops, not immature plants or industrial and personal

19   products derived therefrom."  Conrad Decl. at 4.  Conrad insinuates that there is only one type of

20   hemp plant.  Therefore, plaintiff's attempted activities are distinguishable from those conducted

21   by the plaintiffs in <u>Hemp II</u>, and are clearly prohibited by the CSA.

22   B.  <u>First Amendment</u>

23   The complaint as it pertains to the First Amendments states that "Defendant's

24   actions to deny possessing, planting, and cultivating seeds into plants comes directly in conflict

25

26   _____

     [4] These plaintiffs obtained the product from Canada and Europe where it was grown.  <u>Id.</u>
     at 1013, n.2.

6

1   with Plaintiff's abilities to worship and/or commune with God and does violate the First

2   Amendment as applied to Plaintiff." Compl. at 18:10-14. Plaintiff cites to both the

3   establishment and free exercise clauses of the First Amendment.

4          The First Amendment protects "legitimate claims to the free exercise of religion,"

5   but does not extend to conduct that a State has validly proscribed. Employment Div., Dept. of

6   Human Resources of State of Or. v. Smith, 485 U.S. 660, 671, 108 S. Ct. 1444, 1451 (1988)

7   (citations omitted).

8          In this case, plaintiff's First Amendment claim fails because the Federal

9   government has proscribed the possession of cannabis. The Controlled Substances Act has been

10  found constitutional and trumps California law which permits limited use of marijuana for

11  medicinal purposes. Gonzales v. Raich, ___ U.S. ___, 125 S. Ct. 2195 (June 6, 2005). The state

12  of California was found to have not validly permitted the use of marijuana as this controlled

13  substance is properly subject to federal regulation. (Id. at 2215.) Because Congress has validly

14  proscribed the use of cannabis, plaintiff's First Amendment claim fails.

15         C.   RFRA

16         Defendants' motion requests judgment as a matter of law because plaintiff's

17  attempts to grow marijuana are not based on religious beliefs but on social, political,

18  philosophical, economic and ideological beliefs.

19         The U.S. Supreme Court held that RFRA was unconstitutional as applied to the

20  States because Congress had exceeded its authority. City of Boerne v. Flores, 521 U.S. 507, 532,

21  117 S. Ct. 2157 (1997). RFRA was found to be unconstitutional only in regard to state and local

22  law. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 832 (9th Cir. 1999). Although the

23  Supreme Court has not ruled on its applicability to the federal government, RFRA remains valid

24  in this regard until the court so rules. Cutter v. Wilkinson, ___ U. S. ___, 125 S. Ct. 2113, 2118

25  n.2 (2005); Guam v. Guerrero, 290 F.3d 1210,1218 (9th Cir. 2002).

26  \\\\\

7

1        RFRA requires that a law that works a substantial burden on an
individual's ability freely to exercise his religion must be justified
2        by a compelling government interest and achieve that interest by
burdening as little religious freedom as possible.

3

 42 U.S.C. S 2000bb 1(b); <u>Guam</u>, 290 F.3d at 1218.

4

The statute provides:

5
        Government may substantially burden a person's exercise of
6        religion only if it demonstrates that application of the burden to the
person--
7        (1) is in furtherance of a compelling governmental interest;
(2) is the least restrictive means of furthering that compelling
8        governmental interest.

9  42 U.S.C. S 2000bb 1(b).

10        Defendants argue that plaintiff's expressed religious doctrine is based on beliefs

11  that are philosophical, political, economic, social and secular, and are not based on religion.

12  Defendants cite to <u>United States v. Meyers</u>, 95 F.3d 1475, 1484 (10th Cir. 1996), where the court

13  ruled that "marijuana's medical, therapeutic, and social effects are secular, not religious..."

14  In support, defendants have cited to various portions of the complaint.

15        Throughout the complaint, plaintiff's briefing, and his argument at hearing,

16  plaintiff's description of his growing hemp/cannabis indicates that it is a way of life for him

17  rather than a religion.  Although plaintiff does link "tending his garden" with feeling close to

18  God, he does not specifically link or require growing hemp to commune with God.  (Compl. at

19  7:15.)

20        Tending our family garden as a boy just reinforced what I was
being taught in Catholic School about God, Nature, and our
21        dependency on such.  But, for me, tending the garden became
much more, it somehow brought me closer to God.  It was as if to
22        tend our garden was my most direct connection with God, outside
of my own heart.  It gave me a feeling of communing with God in a
23        way that simply was not there in my church.  Even tending Mass as
an Alter Boy did not satisfy my need to link with God, but my
24        garden did.

25  (Compl. at 5:1-6.)

26  \\\\\

1    Plaintiff admits that his efforts to introduce hemp and its byproducts were for

2    reasons other than worship of his religion:

3    In the mid 1990's I was directly involved in helping to organize
     efforts to introduce and implement and [sic] economic

4    development plan, based on producing hemp, to the Oglala Lakota
     Sioux tribe at Pine Ridge in South Dakota. ... If it had succeeded it

5    would have gone far to bring food, jobs, housing and self-
     sustainability to a place that was then and is still one of the most

6    impoverished areas within U.S. continental borders.

7    (Id. at 7:21-8:1.)

8    Plaintiff also refers to his efforts to aid American farmers who were in desperate

9    need of economic aid by teaching them to grow hemp, and concedes it was an "economic effort."

10   (Id. at 8:4-9.)  Plaintiff additionally invokes hemp in the name of better clothing and household

11   use, better quality of life, and pursuit of survival for man in general and him and his family in

12   particular.  (Id. at 15:25, 15:14, 15:9, 26:24, 27:3.)

13   In his opposition, plaintiff reaffirms that his use of the cannabis/hemp plant

14   represents a way of life rather than a religion.  He states that no other plant can meet all the basic

15   necessities of life, that it is central to our survival, and that it is necessary in order for him to live

16   in the most healthy and harmonious possible way.  (Oppo. at 6:5-7, 6:13-14, 7:16-18.)   Upon

17   questioning by the court at hearing, plaintiff further confirmed that his religion is his way of

18   living:

19   [THE COURT:] It's when we get into RIFRA [sic] that I start
     getting into the problems.  But here's the rub there.  Your religion,

20   of which I take no issue with, is basically everything I do in life is
     religious.  When I get up in the morning in [sic] eat, that's religion.

21   When I'm here in this courtroom, it's religion, and you're shaking
     your head in affirmation.

22   MR. KICZENSKI: Absolutely.

23

24   (Tr. at 6:4-10.)  Other statements by plaintiff at hearing confirm his stance.  See Tr. at 7:21-8:3

25   ("a common reality of access to nature that is about our very existence"); 9:16-21 ("it's my

26   \\\\\

9

1   responsibility to be as healthy as I can"); 12:24-25 ("I need every single plant that's at my

2   disposal that helps me live.")

3          At one point the court stated,

4          But from your paper, growing brussel sprouts is every bit as
           important as hemp, or broccoli is every bit as important as hemp,
5          and you're again nodding in affirmation, and so therefore I can't
           find that marijuana is absolutely a tenant, or essential if you will, or
6          a very important part, if I could bring it down a little bit, to the
           practice of your philosophy/religion.
7

8   (Id. at 12.)

9          All of these statements and affirmations indicate that plaintiff's beliefs are secular,

10  economic, social, and philosophical, but that they are not religious.  As the court in Meyers

11  found, an individual's belief in a "Church of Marijuana" does not make it a religion.  Id. at 1498.

12  Plaintiff has not shown that his beliefs are religious in nature.[5]

13  CONCLUSION

14         Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment,

15  filed July 5, 2005, is construed as an opposition to defendants' motion.

16         For the reasons stated in this opinion, IT IS RECOMMENDED that defendants'

17  motion for summary judgment be granted and judgment entered for defendants.

18         These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

20  (10) days after being served with these findings and recommendations, any party may file written

21

22         [5] On another note, even if a "commune with God through nature" philosophy could be
    considered a religion, plaintiff's religion would not be substantially burdened by not permitting
23  him to grow hemp.  This is clear from the fact that it is growing anything, not specifically hemp,
    which spiritually fulfills plaintiff.  Therefore, the case of Gonzalez v. O Centro Espirita etc.,
24  __U.S.__, __S. Ct. __, 2006 WL 38637 (February 21, 2006), finding that the government would
    have to prove a compelling interest in order to preclude a religious sect from utilizing a
25  hallucinogenic tea in its services) is not applicable here.  In Gonzalez, there was no doubt that the
    sect at issue was a religion, and that preclusion of use of the tea would substantially burden the
26  religion.

1    objections with the court and serve a copy on all parties.  Such a document should be captioned

2    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3    shall be served and filed within ten (10) days after service of the objections.  The parties are

4    advised that failure to file objections within the specified time may waive the right to appeal the

5    District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6    DATED: 2/24/06

7

8                                                         /s/ Gregory G. Hollows

9                                                         _____

10                                                       GREGORY G. HOLLOWS
                                                          U. S. MAGISTRATE JUDGE

11   GGH/076
     Kiczenski2305.sj.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26